## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

JOSE HUMBERTO FLORES,

     Petitioner,

v.                                 Case No. 5:22-cv-329-WFJ-PRL

WARDEN, COLEMAN-USP II,

     Respondent.

_____/

## ORDER

Before the Court is Jose Humberto Flores' ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Dkt. 1). The Warden of Federal Correctional Complex, United States Penitentiary-II, in Coleman, Florida ("Respondent") has responded in opposition (Dkt. 8). Upon careful review, the Court denies Petitioner's petition and dismisses this action without prejudice.

## BACKGROUND

Petitioner is currently serving a 164-month term of imprisonment at Federal Correctional Complex, United States Penitentiary-II, in Coleman, Florida. Dkt. 8-1 at 15. Although he is projected to be released from federal custody on May 25, 2025, Petitioner maintains that his sentence has been improperly calculated and that he

should be released sooner. *Id.* at 13; Dkt. 1 at 7. Specifically, Petitioner believes that he is entitled to additional prior custody credit against his sentence.[1] Dkt. 1 at 10.

## I.    Factual History Leading to Petitioner's Term of Incarceration

On September 30, 2011, Petitioner commenced a 29-month term of supervised release imposed by the United States District Court for the Western District of Texas (the "District Court"). Dkt. 8-1 at 20. Unfortunately, less than one year later, on April 10, 2012, Petitioner was arrested in Texas by the Maverick County Sheriff's Department and charged with assault. *Id.* at 25–26, 42. Petitioner was released from state custody the following day.

As a result, the District Court issued a federal warrant for Petitioner's arrest. *Id.* at 28. Before the warrant could be executed, however, Petitioner was arrested in Texas again by the Eagle Pass Police Department on May 3, 2012—this time for possession of marijuana. *Id.* at 26. Petitioner was transferred to federal custody pursuant to a writ of prosecution on July 11, 2012. *Id.* at 30.

On July 7, 2014, the District Court sentenced Petitioner to a 168-month term of imprisonment for conspiracy to possess with intent to distribute more than 100 kilograms of marijuana. *Id.* at 32, 35. The District Court also revoked Petitioner's

---

[1] Petitioner claims that he has received 752 days of prior custody credit and is entitled to an additional 467 days (resulting in a total of 1,219 days). Dkt. 1 at 11. The record nevertheless demonstrates that, upon review, the Bureau of Prisons has rewarded Petitioner an additional 68 days of prior custody credit. Dkt. 8-1 at 6, 15. This puts Petitioner at a total of 820 days of credit received. It follows that Petitioner is essentially requesting 399 days of additional prior custody credit.

supervised release and re-sentenced him to a consecutive 24-month term of imprisonment for the offense underlying his supervised release. *Id.* at 37–38. Notwithstanding, Petitioner's 168-month term was subsequently reduced to 140-months, leaving Petitioner with a total sentence of 164-months. *Id.* at 35.

On August 1, 2014, Petitioner was returned to state custody in Maverick County, Texas, and the federal judgments against him were lodged as a detainer. *Id.* at 40. The 365th Judicial District Court in Maverick County, Texas (the "State Court") sentenced Petitioner to a 60-month term of imprisonment for his April 2012 assault. *Id.* at 42. The State Court awarded Petitioner prior custody credit for the time he spent in custody from both (1) April 10, 2012, through April 11, 2012, and (2) August 1, 2014, through November 4, 2014. *Id.* Petitioner commenced his 60-month state sentence on July 31, 2014. *Id.* at 46, 48.

On August 3, 2015, Petitioner completed his state sentence and was released by state authorities, via parol, to the federal detainer. *Id.* at 48. Petitioner has remained in federal custody serving his federal sentence since this time.

## II.   Procedural History of the Instant Petition

On July 21, 2022, Petitioner filed the instant Petition for Habeas Corpus pursuant to § 2241. Dkt. 1. Therein, Petitioner argues that the Bureau of Prisons (the "BOP") has failed to properly calculate his prior custody credits and that its refusal

to do so amounts to illegal detainment. *Id.* at 7. Petitioner further maintains that the BOP has denied him access to "grievances and would-be appeals." *Id.* at 9.

On September 14, 2022, Petitioner filed an "Emergency Motion for Summary Judgment." Dkt. 7 at 1. Petitioner largely elaborated on his claims that the BOP has made a mistake with respect to his prior credit calculations. *Id.* at 1–7. The Court denied Petitioner's motion without prejudice and opted to treat it as a supplement to his pending § 2241 petition. Dkt. 9.

On September 26, 2022, Respondent filed an opposition response to Petitioner's § 2241 petition. Dkt. 8. Respondent argues that Petitioner has failed to exhaust his administrative remedies and that, even if he had, Petitioner's credits have been calculated correctly. *Id.* at 3–10. Respondent therefore requests that the Court deny Petitioner any relief.

## DISCUSSION

A § 2241 petition provides grounds for "attack[ing] the execution, rather than the validity" of a petitioner's sentence. *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1079 (11th Cir. 2017) (en banc). A petitioner, however, must exhaust available administrative remedies before he may file a § 2241 petition. *Santiago-Lugo v. Warden*, 785 F.3d 467, 474–75 (11th Cir. 2015). And, in order to do so, a petitioner must comply with the relevant agency's deadlines and procedural rules. *See Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) (addressing the

exhaustion requirement in the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e *et seq.*).

Because calculating credits towards an inmate's sentence is an administrative function of the BOP, the BOP's Administrative Remedy Program ("ARP") sets the parameters for exhaustion here. *See* 28 C.F.R. §§ 542.10–542.19. The ARP provides for three levels of review. First, an inmate must file an administrative remedy request with the institution where he is incarcerated. *Id.* § 540.14. Second, if the institution denies the requested remedy, the inmate must file a regional appeal with the office for the geographic region in which the inmate is confined. *Id.* § 542.15. Third, if the regional office denies the requested remedy, an inmate must file a central office administrative remedy appeal to the BOP's Office of General Counsel. *Id.* Only upon receiving a denial from the BOP's Office of General Counsel are an inmate's administrative remedies considered exhausted.

It is clear that Petitioner has not exhausted his administrative remedies. While Petitioner claims that he was denied access to the ARP appeal process, Respondent's affidavit and attached exhibits demonstrate that Petitioner has filed no administrative remedy request pertaining to his sentence calculation. Dkt. 8-1 at 82, 85–86. There is therefore no administrative denial that the BOP could have kept Petitioner from appealing. Indeed, the alleged remedy denial Petitioner complains of relates to a request his case manager purportedly made to the "BOP's Sentence Computation

Center." Dkt. 1 at 3. Petitioner must exhaust his administrative remedies through the proper channels before he can seek relief in this Court.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) This action is dismissed without prejudice for failure to exhaust administrative remedies.

(2) The Clerk is directed to enter judgment for Respondent against Petitioner and Close this case.

(3) Petitioner is denied a Certificate of Appealability, as he has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner therefore may not proceed on appeal *in forma pauperis*.

**DONE AND ORDERED** at Tampa, Florida, on April 12, 2023.

/s/ William F. Jung
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record
Petitioner, Pro Se